UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE L. STATES, JR., | ) | Case No. 5:07 CV 1259 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

George L. States, Jr., appeals for judicial review under 42 U.S.C. §405(g) and its related counterpart 42 U.S.C. §1383(c)(3) of the decision of the Commissioner denying disability insurance benefits and supplemental security income. States is a younger individual suffering from mental retardation and he contends that the evidence establishes that his degree of impairment met or equaled the listing requirements of §12.05C of the Listing of Impairments of Appendix 1 to qualify him for benefits without further consideration.[1] The Commissioner adopted the determination of an administrative law judge under 20 C.F.R. §404.981 and §416.1481 finding that States had a verbal I.Q. of 73, performance I.Q. of 72 and full scale I.Q. of 70 (Tr. 588), but suffered no deficit of adaptive functioning. (Tr. 21). The conclusion was that States could perform his past relevant work

---

[1]

**12.05 Mental retardation**: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]
20 C.F.R. Pt. 404, Subpt. P, App. 1

as a dishwasher. Thus the decision terminated at the fourth step in the sequential evaluation process.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

There is a requisite form of analysis to fulfill at the final stages of administrative review known as the five-step sequential evaluation process. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532,

110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987).Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

*Adaptive functioning*:

The Commissioner's final decision is that States retains adaptive functioning, so without deficits in "adaptive functioning"- States' mental impairment does not meet the definitional requirement for "mental retardation." States filed applications for DIB and SSI on February 19, 2004,
alleging that he had been disabled since August 16, 2001 due to limitations related to an inability to read or write, kidney problems, diabetes, and lung problems (Tr. 62-64, 104, 636-37). He previously was employed by Ames Department Store for five years, until the store closed in 2001 (Tr. 657). At that job he unloaded trucks and took stock to the floor, lifting up to 75 pounds (Tr.

4

658). Prior to this last job States had worked for a hotel for 16-17 years (Tr. 658-59). He started as a cleaner and moved to dishwasher (Tr. 659).  States contends that he had been unable to work since 2001 due to an inability to read or write and depression (Tr. 660). He found out he was a diabetic when he went into a coma and was hospitalized for two months (Tr. 660). His alleged onset of disability is commensurate with his diabetic coma.

"Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. See *Heller v. Doe by Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). " *West v. Com'r Social Sec. Admin.*,  240 Fed.Appx. 692, 698, 2007 WL 1991059, *5 (6th Cir.2007).  The state agency reviewing physicians remarked that States exhibited only "mild" impairment in activities of daily living and difficulties in maintaining social functioning (Tr. 21, 603). Further, as the ALJ pointed out States has an extensive  work history(Tr. 21 ,65-66).[2]

States counters that his prior occupations of dishwasher and stockperson are unskilled and sometimes performed by individuals with mental retardation, so this does not equate with a

---

[2] Since States' impairment is a mental impairment as categorized under §12.00 of the Listing of Impairments, the sequential evaluation must be applied in conjunction with §404.1520a governing mental impairment and its SSI counterpart §416.920a.  This requires rating the degree of functional limitation in accordance with the prescribed psychiatric review technique (PRT).  The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments.  20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3) incorporate assessment of severity as described under §12.00C of the Listing of Impairments of Appendix 1.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C.  The procedure is to rate "four broad functional areas" of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation.  See 20 C.F.R. §404.1520a(c)(3); §416.920a(c)(3).  The first three functional areas are rated on the five point scale of "none," "mild," "moderate," "marked," and "extreme."  See §404.1520a(c)(4); §416.920a(c)(4). The last area, deterioration or decompensation  is rated on the four-point scale of "none," "one or two," or "three, four or more." *Id.*

demonstration of adaptive deficits. This argument is directed at the ALJ's focus on States' work history. However, reliance on a long work history could also evidence States' coping abilities in the areas of daily living and social functioning, and the ALJ did also find that for purposes of 12.05 there were only mild restrictions in those functional areas (Tr. 21). Hence, there was substantial evidence supporting this decision on this topic.

States next argues that by marking the box for "12.05 Mental Retardation," the state agency reviewing physicians indicated that States met or equaled the listing's requirements. (See Tr. 597). However, the written final capacity assessment clears up this misconception. ( See Tr. 608). While the box for mental retardation was marked., none of the other subcategories were indicated, but instead the remark "BIF"( borderline intellectual functioning) was inserted. (See Tr. 597). The one functional area which was significantly limited was difficulties in maintaining concentration, persistence or pace. (See Tr. 603). This was followed by the physicians' remarks that States was mildly impaired by depression and borderline functioning, noting "he handles all of his own affairs, including cleaning, shopping, cooking and laundry." ( See Tr. 608) The state agency reviewing physicians then reference States work history, and conclude that States is capable of performing simple and repetitive tasks. (*Id.*.) Consequently, the fact that the box for mental retardation was marked in no way supports the conclusion that States suffered deficit in adaptive functioning in light of the remainder of this report from the non-examining state agency physicians.

As a final backup argument, States raises the issue of equivalency. Sections 404.1520a(c)(4) and 416.920a(c)(4) explain that using the Psychiatric Review Technique (PRT) ratings, ratings of

6

none or mild in the first three functional areas and none in the last functional area indicate non-severe impairment. In all other instances, the ALJ must assess whether a "severe" mental impairment meets or equals a listed impairment, and then, if not, assess residual functional capacity and the ability to perform substantial gainful activity. See §404.1520a(d)(2)&(3); §416.920a(d)(2)&(3). As mentioned before, the report indicated "moderate" impairment in the functional area of difficulties in maintaining concentration, persistence or pace. (See Tr. 603).

Administrative consideration of medical equivalence must include consideration of the opinion given by medical or psychological consultants designated by the Commissioner. See §404.1526(c) and (d); §416.926(c) and (d). This designated consultant's opinion presents a formidable obstacle because, " long standing policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6p, 1996 WL 374180 at *3. As the decision in this matter demonstrates, such consideration was given in reaching the conclusion that States was not disabled.

States adds that he is illiterate and has memory problems. However, "[a]lthough the presence of multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05C will 'very rarely be required.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001), quoting *Riley v. Apfel*, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished table decision) (quoting Social Security Program Operations

Manual DI 24515.056 DIC.  The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act.  See *Foster v. Halter*, 279 F.3d at 353.  The Commissioner's decision that the evidence did not meet or equal a listed impairment was supported by substantial evidence.  Accordingly, the Commissioner's denial of benefits due to a lack of deficit in adaptive functioning was supported by substantial evidence.

*Rejection of Dr. Biga's Opinion:*

The uncontradicted opinion from a treating physician is entitled to complete deference.  See *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987); *Jones v. Secretary of Health & Human Serv.*, 964 F.2d 526 (1992).  As *Wilson v. Commissioner* instructs, the ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).  However, reversal is required when in rejecting a treating physician's opinion failed to give "good reasons" for not giving weight to that opinion. See *Wilson v. Commissioner of Soc. Sec.*  378 F.3d 541, 544 (6th Cir. 2004).  This requirement for articulated "good reason" has been long recognized since at least SSR Rulings 96-2p and 96-5p, as cited by States, which require the ALJ to articulate specific legitimate reasons supported by substantial evidence in the record that are sufficiently specific to make clear to subsequent review as the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

8

Supportability is fairly obvious to determine if it is based on the laboratory findings and medical signs. Consistency is simply consistency "with the record as a whole." Supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). This has been incorporated into the regulatory scheme under §404.1527(d)(2) and its SSI counterpart §416.927(d)(2), which require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §416.927(b).

States mistakenly assumes that Dr. Biga was a "treating physician." For a physician to be a "treating physician" there must be a "treating relationship" (20 C.F.R. §404.1527(d)(2); §416.927(d)(2) and this includes consideration of the length of the treatment relationship and frequency of examination (§404.1527(d)(2)(j);§416.927(d)(2)(I). The ALJ noted one report from Dr. Biga and never referred to this doctor as a "treating physician." (Tr. 22) The ALJ assigned less weight to the opinion from this doctor that "after only 1 office visit," States was unable to engage

9

in gainful employment and would need six months to rehabilitate after his hospital discharge. (Tr. 22, 576). One visit does not establish a treatment relationship. See *Barker, v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Moreover, as the Commissioner adds, the ongoing treating relationship must be established at the time of the report is rendered to qualify this doctor as a treating physician. See *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 506, 2006 WL 305648 (6th Cir. Feb. 9, 2006) (unreported).

States next argues that Dr. Biga wrote a subsequent letter which the ALJ failed to mention. (See Tr. 577). In this report, the doctor responds to States' request but provides no statement that he had examined States. Dr. Biga in this letter repeats the need of an extended period of rehabilitation and adds that States cannot drive due to seizure disorder. The ALJ, however, found that the record established that States' condition improved after discharge and based on Dr McGee's March 15, 2004 opinion, found that there were no physical limitations against employment (Tr. 22 580). The ALJ found Dr. McGee's opinion and findings were consistent with the record as a whole. (Tr. 22).

These findings concern both supportability and consistency with the record. Dr. Biga is the only medical source to mention seizure disorder and that doctor assigns great significance to it. However, Dr. McGee provided the results of his examination and given the equal status of both physicians, the ALJ did not err in his lack of deference to Dr. Biga's opinion, and had substantial evidence to reject it.

10

### *CONCLUSION AND RECOMMENDATION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings"); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Based on the arguments presented, the record in this matter and the applicable law, the undersigned recommends that the Commissioner's determination denying disability insurance benefits and supplemental security income be affirmed as supported by substantial evidence.

                                                                                                      s/James S. Gallas  
                                                                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

Dated: August 26, 2008

11